NOV 26 2007

**FILED**

NOV 2 6 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
)            07CV 6635
Plaintiffs, )           JUDGE COAR
)            MAGISTRATE JUDGE COX
v. )
)
APEX EXCAVATING, INC., )
)
Defendant. )

## COMPLAINT

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), and plaintiff James S. Jorgensen ("Jorgensen"), Administrator of the Funds, by their undersigned attorneys, and for their Complaint against Defendant Apex Excavating, Inc., as follows:

### COUNT I

### (Failure To Pay Employee Benefit Contributions)

1. Jurisdiction is based on Sections 502(e)(1) and (2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1132(e)(1) and (2); Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a); and 28 U.S.C. §1331.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391(a) and (b).

3. The Funds are multiemployer benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). The Funds have offices, conduct business and administer the plans within this District. Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts

which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4. Defendant Apex Excavating, Inc.(hereinafter "the Company"), is good standing according to the Illinois Secretary of State. The Company does business within this District and is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of LMRA, 29 U.S.C. §185(a).

5. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to a collective bargaining agreement ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company, which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A.)

6. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the Safety Fund"), the Laborers' Employers' Cooperation & Education Trust ("LECET"), the Contractors' Association of Will and Grundy Counties (the "Will County Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), and the CDCNI/CAWCC Conttractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), to act as an agent in the collection of contributions due to those funds.

7. The Agreement obligates the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to the Funds remitted on behalf of each covered employee.

8. The Agreement further obligates the Company to procure, carry and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions for the duration of the Agreement.

9. Notwithstanding the obligations imposed by the Agreement, the Company has:

(a) failed to report contributions owed to plaintiff Laborers' Pension Fund from August 2007 to the present, and failed to pay contributions to said Fund in August 2007 to the present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries; and

(b) failed to report all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from in August 2007 to the present, and the pay contributions due to said Fund in August 2007 to the present, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

(c) failed to report and pay all contributions owed to Laborers' Training Fund from in August 2007 to the present, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries.

(d) failed to maintain a surety bond to guarantee the payment of wages, Pension and Welfare contributions.

(e) failed to pay a November 2007 note payment in the amount of $3,142.63, and;

(f) failed to pay penalties for late payments paid untimely from May through the present.

10. Despite demand duly made, the Company has not paid the required contributions or other sums due.

11. All conditions precedent to requiring contributions and reports to the Funds have been met.

12. The Company's actions in failing to make timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

13. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and the terms of the Funds' Trust Agreements, the Company is liable to the Funds for unpaid contributions and related amounts, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Apex Excavating, Inc., for the amounts of contributions owed to date together with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs, directing the Company to obtain and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions as required by the Agreement, and an order directing Defendant to timely submit reports and upon demand by Plaintiffs submit to an audit, and any other legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

14. Plaintiff realleges paragraphs 1 through 9 of Count I.

15. Pursuant to the Agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been deducted from the wages of covered employees.

16. Notwithstanding the obligations imposed by the Agreement, the Company has failed to withhold and/or to report to and forward the union dues deducted or the Union dues that should have been deducted from the wages of employees for the period from August 2007 to the present, thereby depriving the Union of income.

17. Pursuant to the Agreement, the Company is liable to the Fund for the unpaid union dues, as well as reasonable attorneys' fees, as the Union's collection agent, and costs, and such other legal and equitable relief as the Court deems appropriate.

18. The Company's actions have violated and are violating Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, Apex Excavating, Inc., for the amount of the union dues owed to date together with all attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

4

By: _____
Attorneys for Plaintiff

Wesley Kennedy
Karen I. Engelhardt
Angie Cowan
Josiah Groff
ALLISON, SLUTSKY & KENNEDY, P.C.
230 West Monroe Street Suite 2600
Chicago, Illinois 60606
(312) 364-9400

November 24, 2007

5



# HEADQUARTERS OF
# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A.F. of L. - C.I.O.
6121 WEST DIVERSEY AVENUE - CHICAGO, ILLINOIS 60639 - PHONE: 773-237-7537 - FAX: 773-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Paul Iwanski for Apex Excavating Inc.**, herein called the "EMPLOYER", and CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and encompassing the geographical area of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. EMPLOYER, in response to the UNION's claim that it represents an uncoerced majority of each EMPLOYERS' laborer employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board certified election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I./C.A.W.C.C., the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, and all other Associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1978 together with all amendments thereto. Where no current Association agreement is negotiated, the terms of the most recent expired agreement are incorporated herein with all terms, conditions and dates extended for the duration hereof, until a current agreement exists that shall be incorporated retroactively herein. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the Association agreement covering the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local Association agreement. Nothing herein shall limit the jurisdiction of this Agreement to less than that provided in this Agreement.

3. The EMPLOYER agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, the LABORERS' PENSION FUND, the CONSTRUCTION AND GENERAL LABORER'S DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND, the CHICAGO AREA LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST ("LECET"), and to all other designated Union-affiliated benefit funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees, designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension, Training and LECET Funds were made by duly authorized agents of the EMPLOYER at all proper rates, for the appropriate periods of time, and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Working Agreement shall retain all the work traditionally performed by members of the UNION. The EMPLOYER agrees that it will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER, whether acting as a contractor, general manager or developer, who contracts out or sublets any of the work coming within the jurisdiction of the UNION, shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise. The EMPLOYER shall provide ten (10) days prior notice to the Union of the sale or transfer.

6. The negotiated wage and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows:

| | |
|---|---|
| June 1, 1998 to May 31, 1999 | $23.35 Per Hour Wages<br>$ 3.27 Per Hour Health and Welfare Fund<br>$ 2.05 Per Hour Pension Fund<br>$ .10 Per Hour Training Fund (plus additional amounts in Association agreement)<br>$ .02 Per Hour MCIAF (if applicable in Association agreement)<br>$ .02 Per Hour LECET (to be deducted from MCIAF if LECET contribution not provided in Association agreement)<br>$ .01 Per Hour Chicagoland Safety Council (if applicable)<br>In addition, the Employer shall pay other amounts if provided in approved Association agreements for industry funds. |
| June 1, 1999 to May 31, 2000 | $ 1.25 Per Hour increase for the year June 1, 1999 through May 31, 2000 to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions to remain the same unless additional sums are allocated. |
| June 1, 2000 to May 31, 2001 | $ 1.35 Per Hour increase for the year June 1, 2000 through May 31, 2001 to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions remain the same unless additional sums are allocated. |

All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1998, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by the said contract, uniform working dues in the amount of 1.5% of gross wages, or as determined by the UNION, and shall remit monthly to the UNION office designated by the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whom wages and dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through May 31, 2001 (unless an applicable Association agreement is of longer duration) and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the EMPLOYER and the UNION agree to be bound by the new area-wide negotiated contracts with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contracts.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement. Upon request of the UNION, the EMPLOYER shall execute another agreement that reflects the final contract settlements incorporated herein.

Dated **July 21, 2000**
month / day     year

ACCEPTED:

Laborers' Local Union No. **225**

_____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By _____
Robert E. Bloch, Trustee

For Office Use Only: **DEMOLITION**
_____

x _____ **Apex Excavating Inc.**
(Employer)

By x **PAUL IWANSKI, President**
(Print Name and Title)

x _____
(Signature)

x **1900 N. Austin**
(Address)

x **Chicago IL, 60639**
(City, State and Zip Code)

x **773 385 8425**
(Telephone)

TRUST FUND  Fax **773 385 8429**

**Exhibit A**